## J. V. Wickert, Appellee, v. L. M. Crosthwait, Appellant.

VERDICTS—*when not disturbed.* A verdict will not be set aside on review as against the weight of the evidence unless clearly and manifestly so.

Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1911. Affirmed  Opinion filed October 14, 1911.  Rehearing denied December 8, 1911. *Certiorari* denied by Supreme Court (making opinion final).

STONE, OGLEVEE & FRANKLIN, for appellant.

DE MANGE, GILLESPIE & DE MANGE, for appellee.

MR. PRESIDING JUSTICE PHILBRICK delivered the opinion of the court.

This is an action brought by plaintiff against defendant to recover a commission alleged to be due from the defendant to the plaintiff by reason of services alleged to have been rendered to defendant under and by virtue of an agreement made and entered into between them regarding the sale of lands. Trial resulted in a verdict and judgment against defendant for $3,200; to reverse that judgment this appeal is prosecuted.

The usual errors are assigned, and it is insisted by defendant that the court erred in the admission and rejection of evidence, in the giving and refusing of instructions, and that the judgment is contrary to the manifest weight of the evidence and against the law.

Defendant was a real estate dealer and in addition to handling the property of others and selling the same upon commission, he bought and sold lands upon his own account, and at the time the contract between plaintiff and defendant was entered into defendant claims to have been the owner of sections 1, 3, 5, 7, 9, 11, 13, 15, 17, 23 and 25 in township 17 south, range 50, west, in the state of Colorado. Plaintiff had been employed as a school teacher; his term of school expired and he entered into negotiations with the defendant for an engagement in the real estate business; he asked to be employed on a salary but defendant declined to pay a salary and it was agreed that plaintiff should assist defendant in making sales of real estate and for which defendant was to pay plaintiff one dollar per acre.

Defendant insists that this contract related only to such lands as the defendant owned in the state of Colorado and which he was then undertaking to dispose of, and that for all such lands that plaintiff secured him a buyer or sent him a customer who pur-

chased from him any of these lands at the price of ten dollars per acre he agreed to pay one dollar per acre but that this did not apply to lands not owned by defendant and that plaintiff did not secure or send to the defendant a customer who purchased any of said lands. On the other hand, it is contended by the plaintiff that he was to receive one dollar per acre for any and all lands for which he sent to the defendant or procured for the defendant a customer and with whom the defendant made a deal in regard to the sale of lands, and that the contract related not only to lands owned by defendant but to all lands which defendant had for sale. Negotiations were entered into by plaintiff with various parties concerning the purchase of these lands, and he made trips to various places in connection therewith. Defendant further contends that before any trade or contract was consummated with customers secured by plaintiff, defendant had sold or disposed of all his holdings in the state of Colorado and so informed plaintiff; that he had listed with him for sale a certain tract of land lying in township 51 near the lands which he had owned; that these lands belonged to one Meacham. Plaintiff succeeded in interesting one James Bailey, owning land in Christian county, Illinois, in the Colorado property owned by Meacham; no deal was made wth him regarding this land, but it developed during the negotiations with James Bailey that his father, D. G. Bailey, owned property in the state of Nebraska and also in Pike county, Illinois; that a trade might be consummated with him for the Colorado land in exchange for the Nebraska and Pike county land. This trade was taken up and was finally consummated in November 1908 and the exchange of lands made. But it is insisted by defendant that he informed plaintiff before this trade was consummated that Meacham would pay no commissions upon a trade of property and the only commission that he would

be able to get from this transaction would be a commission of $500 to be paid by Bailey and that he would be willing to divide this $500 with the plaintiff. Plaintiff however denies that any subsequent agreement of this character was made.

Plaintiff also insists that the lands now claimed to be Meacham's land and which were traded to Bailey for the Nebraska and Illinois lands are the same lands which were shown to him at the time of the original agreement as being owned by the defendant, and that they were marked upon a folder furnished to him by defendant. In the trade made between Meacham and Bailey, Meacham traded 3,200 acres of land, being sections 1, 3, 11, 13 and 15, township 17, range 51, Kiowa county, Colorado. When this trade was made defendant requested Bailey not to inform plaintiff that a trade had been consummated and for a long time after this trade was consummated, during the months of December, January and February following, defendant kept insisting to the plaintiff that the trade was still hanging fire and that he was endeavoring to complete it. Plaintiff finally ascertained from Bailey that the trade had been made and the deal closed in November, 1908. He made demand upon defendant for his commission; defendant replied and denied owing him anything and insisted that it was not consummated through plaintiff's efforts, that the trade which he had started was with James Bailey and it fell through. The record discloses beyond any question that Bailey was brought to the defendant through the efforts of the plaintiff and it is admitted that plaintiff was instrumental in and did bring Bailey and Meacham together, but defendant insists that there was no agreement with plaintiff to pay him any commissions for any services rendered in this regard. The question as to what contract was made between defendant and plaintiff and to what lands the agreement, if any had been made, re-

lated to, upon which defendant was to pay a commission of one dollar per acre, were questions of fact to be determined by the jury, and we are not justified in holding that the jury were not warranted in finding from the record in this case that the defendant contracted with the plaintiff for the payment of one dollar per acre and that the contract related thereto applied not only to lands sold or traded by defendant, whether owned by him or not. The record discloses that defendant has tried to deceive plaintiff and to keep from him information regarding business transacted by defendant which plaintiff was entitled to be informed of, and that defendant has not acted fairly and honestly with plaintiff in regard to this matter.

Defendant also insists that his contract with the plaintiff related only to lands that were sold by him through the efforts of the plaintiff and that the contract, whatever it was, did not include traded lands. The question as to whether the contract was so limited was also a question of fact for the jury to determine and they have determined these questions adversely to the claim of the defendant, and in our opinion, the proof justifies their finding.

It is insisted by plaintiff that the lands which were traded to Bailey in this transaction were identical with those shown and marked upon the folder given to him by the defendant and are the lands to which the original contract related. While this is denied by the defendant, the folder was not produced by either party and the question as to whether any lands were marked upon that folder other than those owned by the defendant personally was also a question of fact.

It is insisted by the defendant that the question of the contract between plaintiff and defendant rests wholly upon the evidence of the plaintiff and that this record shows that he has been successfully impeached, and that therefore there is no evidence to sustain the

findings of the jury. The question of the impeachment depends wholly upon the introduction in the record of the testimony testified to by the plaintiff at a former trial, and the question as to which testimony was correct and as to whether or not the plaintiff's testimony was rendered incredible were also questions of fact for the jury, and it is not a question of law for this court to hold that plaintiff was impeached, and even if it was we should be very reluctant to do so upon the evidence in this record. The question of the weight and credibility to be given to the testimony of the various witnesses is solely one for the jury to determine, and we are unable to say that they acted from any improper motive or from prejudice or passion.

Defendant insists that the contract sued on in the case of Close v. Browne, 230 Ill. 228, is like the one at bar and that the decision in that case controls this, but an examination of that case discloses that the contract therein set forth and sued on was materially different from the one alleged by plaintiff to have been made by defendant with him in the case at bar. The finding of the jury that the contract alleged to have been made by plaintiff, as set forth by the testimony in this case, was the contract between plaintiff and defendant herein, and makes the contract so materially different from that sued on in Close v. Browne, that the case is not in point in the controversy here.

Defendant criticises the instructions given on behalf of the plaintiff and also insists that the court erred in refusing certain instructions asked by him. On a careful examination of these instructions and the criticisms made, we are satisfied that the court made no error in the giving or refusing of the instructions and that the jury were fully and properly instructed on all questions involved in this record.

Finding no error in this record which may have been

in any manner prejudicial to the defendant, the judgment is affirmed.

*Affirmed.*